2014-1652
(Serial No. 12/429,724)

IN THE

# United States Court of Appeals
### FOR THE FEDERAL CIRCUIT

# In re:  Webb

*Appeal from the United States Patent and Trademark Office*
*Patent Trial and Appeal Board.*

# Corrected Joint Appendix

| | |
|---|---|
| Robert A. Rowan<br>rar@nixonvan.com<br>Alan M. Kagen<br>amk@nixonvan.com<br>Michael E. Crawford<br>mec@nixonvan.com<br>NIXON & VANDERHYE P.C.<br>901 North Glebe Road<br>Arlington, Virginia 22203<br>703-816-4000 | Nathan K. Kelley<br>nathan.kelley@uspto.gov<br>Scott C. Weidenfeller<br>scott.weidenfeller@uspto.gov<br>Molly R. Silfen<br>molly.silfen@uspto.gov<br>OFFICE OF THE SOLICITOR<br>Mail Stop 8<br>U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450<br>571-272-9035 |
| Attorneys for Appellant<br>Derek J. Webb | Attorneys for Appellee,<br>the Director of the U.S. Patent<br>and Trademark Office |

# Table of Appendix Pages

**Document**                                                                    **Page**

Decision of Patent Board on appeal (4/1/2014).................................................A001

Certified list – record papers for appeal re 12/429,724 (7/10/2014).................A013

Application specification (4/24/2009).............................................................A015

Application claims (4/24/2009).......................................................................A023

Application abstract (4/24/2009).....................................................................A026

Application drawings (4/24/2009)...................................................................A027

Inventor's declaration (4/24/2009).................................................................A029

Power of attorney (4/24/2009)........................................................................A030

Non-publication request (4/24/2009)..............................................................A034

Information disclosure statement (4/24/2009)..................................................A035

Filing receipt (5/18/2009)...............................................................................A045

Notice of acceptance of power of attorney (5/18/2009)....................................A048

Non-final rejection (4/2/2010)........................................................................A049

Amendment to claims & response (7/27/2010).................................................A068

Final rejection (9/30/2010).............................................................................A082

Notice of appeal (1/31/2011)..........................................................................A093

Appeal brief (4/25/2011)................................................................................A098

Examiner's answer to appeal brief (7/21/2011)...............................................A136

**Document**                                                                                    **Page**

Applicant's reply brief (9/19/2011)....................................................................A151

Request for oral hearing (9/19/2011)................................................................A157

Notice of entry of reply brief (10/16/2011) .......................................................A168

Appeal docketing notice (11/4/2011).................................................................A173

Confirmation of appeal hearing (11/18/2013) ...................................................A175

Record of oral hearing (3/20/2014)...................................................................A176

Notice of appeal (5/29/2014) ............................................................................A190

Memorandum from USPTO Deputy Commissioner for Patent
Examination Policy, Andrew H. Hirshfeld, to patent examining
corps: "Preliminary Examination Instructions in view of the Supreme
Court decision in *Alice Corporation Party. Ltd. v CLS Bank
International, et al*" (6/25/2014) .......................................................................A193

 **U**NITED **S**TATES **P**ATENT AND **T**RADEMARK **O**FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/429,724 | 04/24/2009 | Derek J. Webb | AMK-2674-190 | 1588 |

23117     7590     04/01/2014

NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| LAYNO, BENJAMIN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 04/01/2014 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

PTOMAIL@nixonvan.com
pair_nixon@firsttofile.com

PTOL-90A (Rev. 04/07)

**A001**

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

*Ex parte* DEREK J. WEBB

———————————

Appeal 2012-001567
Application 12/429,724
Technology Center 3700

———————————

Before:  JENNIFER D. BAHR, JOHN C. KERINS, and
JILL D. HILL, *Administrative Patent Judges.*

BAHR, *Administrative Patent Judge.*

DECISION ON APPEAL

Appeal 2012-001567
Application 12/429,724

STATEMENT OF THE CASE

Derek J. Webb (Appellant) appeals under 35 U.S.C. § 134 from the
Examiner's decision rejecting claims 1-15.  We have jurisdiction under
35 U.S.C. § 6(b).  An oral hearing in accordance with 37 C.F.R. § 41.47 was
held on February 11, 2014.

We AFFIRM.

*The Claimed Subject Matter*

Claim 7, reproduced below, is illustrative of the claimed subject
matter.

> 7.    A method of playing a player(s) versus player(s) card
> game with a plurality of players, the method comprising dealing
> hands of cards to the players one card at a time using at least
> one device or using a table; conducting multiple rounds of
> wagering among the players in a first direction; conducting a
> last round of wagering among the players in a second direction
> opposite from the first direction; and resolving the card game
> and wagers only after completing all rounds of wagering,
> wherein the first direction is pre-established prior to conducting
> the initial round of wagering.

*Evidence*

The Examiner relied on the following evidence in rejecting the claims
on appeal:

Skratulia                    US 5,607,161              Mar. 4, 1997

Victor H. Royer, *How to Play Casino Poker – Texas Hold-Em* available at
http://www.vegas.com/vegascom/betbac/holdem.html (last visited Jul. 11,
1996).

John Scarne, *Scarne's Encyclopedia of Games*, pp.14, 26 (Harper & Row
1983) (1973).

Appeal 2012-001567
Application 12/429,724

*Rejections*

Claims 1-15 stand rejected under 35 U.S.C. § 101 as being directed to patent-ineligible subject matter.

Claims 1-3, 5-11, and 13-15 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Royer and Skratulia.

Claims 4 and 12 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Royer, Skratulia, and Scarne.

OPINION

*Rejection under 35 U.S.C. § 101*

Appellant groups claims 1-15 together in contesting this rejection. Thus, we select claim 7 to decide the appeal of this rejection, with claims 1-6 and 8-15 standing or falling with claim 7. 37 C.F.R. § 41.37(c)(1)(vii) (2011).

The Examiner determined that claim 7 is not directed to patent-eligible subject matter under 35 U.S.C. § 101, because it "requires no machine implementation, requires no transformation of a particular article and is seen as an **attempt to receive patent protection for an abstract idea in the form of a new set of rules**." Ans. 8. The Examiner analyzed several factors weighing toward or against patent eligibility and determined that "the factors in this case weighing against patent eligibility **far outweigh** the factors weighing toward patent eligibility." Ans. 9 (citing Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of Bilski v. Kappos, 75 Fed. Reg. 43,922, 43,925-26 (Jul. 27, 2010)).

Appellant argues that none of the factors weighing against patentability applies to Appellant's invention, which, according to

Appeal 2012-001567
Application 12/429,724

Appellant, "is fully 'embodied' and can only be performed with a specified apparatus (playing cards) and 'actual physical steps.'" App. Br. 18. Appellant additionally argues that "Appellant's invention clearly 'implements a concept in a tangible way [and] the performance of [the claimed] steps is observable and verifiable.'" *Id*. Appellant adds that "without being 'observable and verifiable,' the claimed 'method of playing a player(s) versus player(s) card game,' would fail both in actual practice and in obtaining regulatory approval if required in any U.S. jurisdiction allowing commercial poker games." *Id*.

Appellant asserts that "[t]here is nothing 'abstract' . . . in the subject matter of the present invention," because the claimed method "can only be accomplished with a specific apparatus, playing cards," and is "defined around a very specific set of 'physical steps' of dealing cards and conducting wagering rounds in specified directions." App. Br. 21. According to Appellant, "[i]f an 'idea' is being claimed, it is not an abstraction in any sense of the word; but a very specific application of an idea." App. Br. 22. Appellant urges that "the claimed subject matter is a very specific playing methodology for a card game that is designed to be played for real money. Poker rooms in casinos, for example, are operated with the expectation of making very real profits for the casino, including the casino's shareholders or private owners." App. Br. 23.

Appellant contends that the Examiner has "erroneously applied" the machine-or-transformation test, which, according to Appellant, does not require that the steps be performed by a machine, rather than by a human being. Reply Br. 3. Additionally, Appellant asserts that "[t]he claimed

4

**A005**

Appeal 2012-001567
Application 12/429,724

cards and players are all integral apparatus and must exist physically or be 'tied to' specific machine components." *Id.*

According to Supreme Court precedents, "the machine-or-transformation test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101," but "is not the sole test for deciding whether an invention is a patent-eligible 'process.'" *Bilski v. Kappos*, 130 S.Ct. 3218, 3227 (2010). Thus, the Examiner correctly considered this test in determining whether claim 7 is directed to patent-eligible subject matter.

We do not agree with Appellant that the Examiner erroneously applied the machine-or-transformation test. The machine-or-transformation test asks whether the claim "requires a particular machine implementing a process or a particular transformation of matter." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1347 (Fed. Cir. 2013). Appellant makes no assertion that claim 7 requires a particular transformation of matter. Rather, Appellant asserts that "[t]he claimed cards and players are all integral apparatus and must exist physically or be 'tied to' specific machine components." Reply Br. 3. Thus, we focus our attention on the question of whether claim 7 requires a particular machine implementing a process.

We reject Appellant's contention that players can reasonably be considered apparatus or machine components forming an integral apparatus with the cards. Moreover, the Examiner correctly found that claim 7 is not limited to physical cards. Indeed, Appellant's invention is not limited to any particular form or media, but, rather, encompasses an unlimited variety of forms and media, both known and unknown. In particular, Appellant's Specification states that

5

**A006**

Appeal 2012-001567
Application 12/429,724

> the embodiments described above can be embodied in a wide variety of forms and media including, *but not limited to*, single player slot video machines, multi-player slot video machines, electronic games and devices, lottery terminals, scratch-card formats, software as well as in-flight home and internet entertainment. *In addition*, the described embodiments *can also* be readily implemented as a computer program product (e.g., floppy disks, compact disks, etc.) comprising a computer readable medium having control logic recorded therein to implement the features of the invention as described in relation to the other preferred embodiments.

Spec. 8, para. [0026] (emphasis added).

This point also was conceded by Appellant's representative at the oral hearing. *See* Oral Hearing Transcript 7-9. Furthermore, in any event, even if the cards were considered to be a specific machine or apparatus, the cards do not implement any process. Claim 7 mentions cards only in the context of the step of "dealing hands of cards to the players one card at a time using at least one device or using a table." This claimed step requires nothing more than that the cards be dealt, i.e., given or provided, to players. Further, the limitation "using at least one device or using a table" is not sufficient to tie the claimed method to a particular machine. The nominal reference to a generic "device" in the phrase "using at least one device" fails to limit the device to any particular device (i.e., machine). Similarly, the nominal mention of "using" either a device or a table does not tie the device or table to the "dealing" step in any meaningful way.

A claim is not patent-eligible if it is to an abstract idea itself, rather than to an application of an abstract idea. *Ultramercial*, 722 F.3d at 1343 (citing *Bilski*, 130 S.Ct. at 3230).

6

Appeal 2012-001567
Application 12/429,724

Appellant's arguments do not persuade us that the Examiner erred in determining that claim 7 is directed to an abstract idea, and not to the application of an abstract idea. As noted above, Appellant's claimed method is not "embodied" in any particular, tangible, or concrete form, nor limited to performance by a specific apparatus, but, rather, encompasses an unlimited variety of forms and media. Even accepting Appellant's argument that the performance of the steps in the claimed method is observable and verifiable, this does not weigh substantially, if at all, against abstractness. Indeed, the performance of the steps of the method claimed in *Bilski* held by the Supreme Court to be an abstract idea is no less observable and verifiable than the steps of claim 7 before us in this appeal." *See Bilski*, 130 S. Ct. at 3223, 3231." Appellant's assertions with respect to regulatory approval and expectation of real profits by owners and shareholders of poker rooms and casinos are not commensurate with the scope of claim 7, which is not limited to a casino or commercial poker game and does not require regulatory approval. Moreover, claim 7 does not specify the subject matter of the wagering, nor require that the claimed method be performed or played for real money. In any event, the risk of losing or potential for winning or making real money or real profit does not strike us as a particularly strong factor weighing against abstractness and in favor of patentability. Indeed, managing the risk of loss of real money and the potential for making profit clearly is the incentive for practicing the method held by the Supreme Court to be patent-ineligible in *Bilski*, 130 S.Ct. at 3223, 3231.

Claim 7 is directed to the concept of varying wagering positions or directions in a card game to eliminate positional advantage. The preamble limitation of "playing a player(s) versus player(s) card game with a plurality

7

Appeal 2012-001567
Application 12/429,724

of players" does not meaningfully limit the concept, as player(s) versus player(s) competition is implicit in the concept of positional advantage in wagering position or direction. *See Ultramercial*, 722 F.3d at 1348 ("If, to implement the abstract concept, one must perform the additional step, or the step is a routine and conventional aspect of the abstract idea, then the step merely separately restates an element of the abstract idea, and thus does not further limit the abstract concept to a practical application."). Alternatively, this preamble limitation simply refers to the relevant and pre-existing audience, namely players of player(s) versus player(s) card games, which existed long before the filing of the present application. *See Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S.Ct. 1289, 1297 (2012) (holding that a limitation that simply refers to a relevant audience that existed long before anyone asserted the patent claim was ineffective to render the claim patent-eligible). At most, this language limits the claim to the use of the idea of varying wagering positions to one very broad field of use (player(s) versus player(s) card games). The Supreme Court found a similar, and in fact even narrower, field of use limitation did not make the concept patentable. *Bilski*, 130 S.Ct. at 3231 (stating that "limiting an abstract idea to one field of use or adding token postsolution components did not make the concept patentable" and holding claims attempting "to patent the use of the abstract idea of hedging risk in the energy market and then instruct the use of well-known random analysis techniques to help establish some of the inputs into the equations" to be patent-ineligible). The steps of dealing cards and resolving the card game do not render the claimed method patentable, as these are necessary and conventional steps to playing a card game (i.e., conventional pre-solution and post-solution activity). *See Parker*

8

Appeal 2012-001567
Application 12/429,724

*v. Flook*, 437 U.S. 584, 590 ("The notion that post-solution activity, no matter how conventional or obvious in itself, can transform an unpatentable principle into a patentable process exalts form over substance."); *cf. Mayo*, 132 S.Ct. at 1298 ("Purely 'conventional or obvious' '[pre]-solution activity' is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law"). Likewise, the step of conducting multiple rounds of wagering in a first direction is nothing more than conventional pre-solution activity. Finally, the step of conducting a last round of wagering in a second direction opposite from the first direction is required to implement the concept of varying wagering position or direction to eliminate positional advantage, or a restatement of an element of the idea.[1]

For the above reasons, Appellant does not apprise us of error in the Examiner's determination that claim 7 is not directed to patent-eligible subject matter under 35 U.S.C. § 101, because it requires no machine implementation, requires no transformation of a particular article, and is to an abstract idea. We thus sustain the rejection of claim 7 and of claims 1-6 and 8-15, which fall with claim 7, under 35 U.S.C. § 101.

---

[1] In asserting that the claimed invention is "a very specific application of an idea," Appellant also points to the step of establishing a button player in reference to claim 1. App. Br. 22. This point is not pertinent to claim 7, which does not require establishment of a button player. Nevertheless, in any event, the step of establishing a button player is nothing more than establishing a reference point for dealing cards and starting the wagering, which are necessary and conventional pre-solution steps to the method, and thus would not render the claim patent-eligible.

9

Appeal 2012-001567
Application 12/429,724

*Rejections under 35 U.S.C. § 103(a)*

The Examiner's rejections of claims 1-15 under 35 U.S.C. § 103(a) are grounded in part on the Examiner's finding that "Skratulia teaches that it is known in the poker game art to reverse the wagering direction (clockwise or counter-clockwise) after each wagering sequence in poker." Ans. 10 (citing Skratulia, col. 4, ll. 20-53); *see also* Ans. 14 (stating, "The Examiner take[s] the position that [by] recitation of 'Direction of sequential' play, Skratulia is referring to the wagering direction or wagering sequence for each round conducted during play of Skratulia's card game."). Based on this finding, the Examiner determined it would have been obvious "to modify the game of Texas Holde-em by alternating the direction of the rounds of wagering relative [to] the player having the player button" to mitigate position advantage. Ans. 10 (citing Skratulia, col. 4, ll. 49-51). Based on this same finding, the Examiner also determined it would have been obvious "to implement the wagering technique taught by Skratulia to the Omaha poker game [taught by Scarne] in order to mitigate the positional advantage during each hand." Ans. 11 (citing Skratulia, col. 4, ll. 49-51).

We agree with Appellant that the Examiner erred in finding that Skratulia teaches reversing the wagering direction after each wagering sequence. *See* App. Br. 24-25; Reply Br. 4-5. Skratulia discloses determining the "direction of sequential play (prior to step **38** of FIG. 1), generally designated as **37**" based on whether the total numeric value of the three special dice is odd or even. Col. 4, ll. 36-46. The "direction of sequential play" alluded to by Skratulia is "the direction of sequential play of step **38** of FIG. 1." Col. 4, ll. 42-45. In step **38**, the bank hand "sequentially compares hands and settles wagers" with the other players.

10

**A011**

Appeal 2012-001567
Application 12/429,724

Col. 3, ll. 58-60.  The players do not wager during the sequential play of step
**38**.  Rather, all wagering takes place in step **28** prior to the rolling of the
three special dice in step **32**.  Col. 3, ll. 16-17, 52-53; fig. 1.

We do not sustain the Examiner's rejections of claims 1-15 under
35 U.S.C. § 103(a), because they are based on an erroneous finding by the
Examiner.


DECISION

The Examiner's decision rejecting claims 1-15 under 35 U.S.C. § 101
is affirmed, and the Examiner's decision rejecting claims 1-15 under
35 U.S.C. § 103(a) is reversed.

No time period for taking any subsequent action in connection with
this appeal may be extended under 37 C.F.R. § 1.136(a).  *See* 37 C.F.R.
§ 1.136(a)(1)(iv).

<u>AFFIRMED</u>


Klh

**A012**

Form PTO 55 (12-80)

## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

<u>__July 10, 2014__</u>
(Date)

**THIS IS TO CERTIFY** that the attached document is a list of the papers that comprise the record before the United States Patent and Trademark Office, Patent Trial and Appeal Board (PTAB):

*Applicant(s):* **Derek J. Webb**

*Date Filed:* **April 24, 2009**

*Serial No:* **12/429,724**

*Title:* *POKER GAMES WITH VARYING POSITION ADVANTAGE*

By authority of the

**UNDERSECRETARY OF COMMERCE FOR
INTELLECTUAL PROPERTY AND DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

*Certifying Officer*



**A013**

## Prosecution History Ser. No. 12/429,724

| Date | Document |
|------|----------|
| 04/24/2009 | PATENT APPLICATION |
| 04/24/2009 | INFORMATION DISCLOSURE STATEMENT |
| 04/24/2009 | NON-PUBLICATION REQUEST |
| 04/24/2009 | POWER OF ATTORNEY |
| 05/18/2009 | NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY |
| 05/18/2009 | APPLICATION FILING RECEIPT |
| 05/18/2009 | FILING RECEIPT |
| 04/02/2010 | NON-FINAL OFFICE ACTION |
| 07/27/2010 | AMENDMENT/RESPONSE |
| 09/30/2010 | FINAL REJECTION |
| 01/31/2011 | NOTICE OF APPEAL |
| 04/25/2011 | APPEAL BRIEF |
| 07/21/2011 | EXAMINER'S ANSWER |
| 09/19/2011 | REPLY BRIEF |
| 09/19/2011 | REQUEST FOR ORAL HEARING |
| 10/26/2011 | NOTICE OF ENTRY OF REPLY BRIEF |
| 11/04/2011 | DOCKETING NOTICE |
| 11/04/2013 | NOTICE OF HEARING |
| 11/18/2013 | CONFIRMATION OF HEARING |
| 03/20/2014 | RECORD OF ORAL HEARING |
| 04/01/2014 | DECISION ON APPEAL |

TITLE OF THE INVENTION

POKER GAMES WITH VARYING POSITION ADVANTAGE

CROSS-REFERENCES TO RELATED APPLICATIONS

[0001]        This application is a continuation of U.S. Patent Application Serial No.
11/227,106, filed September 16, 2005, pending, the entire contents of which are hereby
incorporated by reference in this application.

STATEMENT REGARDING FEDERALLY
SPONSORED RESEARCH OR DEVELOPMENT

[0002]        (NOT APPLICABLE)

BACKGROUND OF THE INVENTION

[0003]        Texas Hold 'Em has become popular over the last several years due to its
simplicity, the ability to accommodate a higher number of players per table, internet and
tournament poker as well as televised poker.  The game is played so that each player has
the use of seven cards in order to form a five card poker hand.  The player having the
highest poker hand is the game winner.  Hands are ranked in standard poker fashion, i.e.
royal flush, straight flush, four of a kind, full house, flush, straight, three of a kind, two
pair, one pair, and high card, in descending order.

[0004]        In Texas Hold Em, each player receives two cards face down.
Additionally, there are five community cards dealt face up.  The term "community card"
refers to a non-player specific card that is exposed (face up) and available for use by any
of the players in order to form a poker hand.  Each player is enabled to use seven cards
(i.e. the two concealed cards held by the player, plus the five community cards that are
available to each player).

1

**[0005]**        In Texas Hold Em, the cards are dealt sequentially so that each player initially receives two cards face down, after which the five community cards are dealt face up. Rounds of betting occur at certain times during the course of the deal, usually after the two face down cards have been dealt, then after the third community card has been dealt (dealt three cards at one time, called the "flop"), then after the fourth community card has been dealt (the "turn"), and finally after the fifth community card has been dealt (the "river"). Thus, there are four rounds of betting, where antes and/or blinds prior to the cards being dealt are considered part of the first round.

**[0006]**        When game rules include an ante, all players are required to put a certain fixed amount into the "pot" in order to participate in the hand. In this instance, in a typical game, the player making the first wager is the player sitting in next clockwise sequence of a button player. A blind is also a wager that is required prior to dealing any cards, but in a typical game, the two players sitting in next clockwise sequence of the button player are required to place a "blind" wager, sometimes in unequal amounts. For example, the player sitting to the immediate clockwise sequence of the button player may be considered the small blind with a first required wager amount, and the next player in clockwise sequence may be considered the big blind with a second larger required amount (typically twice the small blind amount). The usual structure is to use two blinds, but it is possible to play the game with one blind, multiple blinds, an ante, or combination of blinds plus an ante. In a two blind game, after the player cards are dealt, the player sitting in next clockwise sequence of the big blind player would make the next wager (the "first" wagers of the first wagering round being made as small blind and big blind).

**[0007]**        Omaha is another popular poker game utilizing community cards. In Omaha, each player is dealt four face down cards (personal cards), after which a first round of betting is conducted. The dealer then deals three community cards (the "flop"), and a second wagering round is conducted. The dealer then deals a fourth community card (the "turn"), and a third round of betting is conducted. Finally, the dealer then deals a fifth community card (the "river"), and a final betting round is conducted. In a fast-

2

action version of Omaha, the turn card and the river card are dealt together so that only three rounds of betting are conducted.

[0008]    At the showdown, each player must use exactly two of their personal cards and three of the five community cards.  In a HIGH-LOW game, each player can use any two personal cards for a high hand and any two personal cards for a low hand.  Typically, a best low hand is A-2-3-4-5, which may also count as a straight to be the best high hand.  Straights and flushes are not considered for counting a low hand.

[0009]    As is typical in poker games using community cards, a marker or "button" is used as an indicator for beginning a round of wagering, usually by the first player sitting in next clockwise sequence of the player holding the button (the button player) who is still in the game.  The button is passed clockwise one player after each hand is completed.  There is an inherent advantage to the button player as the button player is afforded the opportunity to see each player's wager action prior to acting.  The button player can thus gain a sense about each player's hand before deciding what action to take (wager, call, raise or fold).  The button player is always the last player to act until such time as the button player folds, whereby the player acting immediately prior to the button player becomes the last player to act.

BRIEF SUMMARY OF THE INVENTION

[0010]    As a variant to conventional poker games, particularly those utilizing community cards, the present invention encompasses poker games where the betting order or direction varies during wagering rounds of one hand.  For example, a first wagering round may proceed in the conventional manner described above, and a second or subsequent wagering round may start with a different player and/or proceed in an opposite direction (counter-clockwise or "anti-clockwise") among the players.  The varied wagering order can be changed for each betting round or follow a preset pattern.  In this manner, the button player does not have the advantage during the entire hand.  As mentioned above, this advantage is significant during conventional play as the button player in the conventional game has the ability to use wager action to influence the game.

3

1461626

**A017**

That is, in each wagering round in the conventional game, the button player is afforded the opportunity to see each player's wager action prior to acting. The button player can thus gain a sense about each player's hand before deciding what action to take (wager, call, raise or fold). Eliminating or reducing this advantage by the method of the present invention distributes the advantage during the game, resulting in a game methodology that is more fair than the conventional methodology.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0011]     These and other aspects and advantages of the present invention will be described in detail with reference to the accompanying drawings, in which:

[0012]     FIGURE 1 is an exemplary game play scenario illustrating the method of the present invention; and

[0013]     FIGURE 2 shows exemplary dealer buttons for use during game play.

## DETAILED DESCRIPTION OF THE INVENTION

[0014]     FIG. 1 is an exemplary illustration of a game play scenario for a Texas Hold 'Em poker game. Although in the exemplary embodiment illustrated in FIG. 1, the method of the invention is illustrated in the context of an application to Texas Hold 'Em, the concept of the invention may be suitable for various poker games, particularly those including community cards such as Omaha and others.

[0015]     The table 10 is shown with five player areas 12 for players (a)-(e), although many players or fewer players can play at one time. In a casino environment, a dealer typically sits in a dealer area 14 and deals cards to each player as well as community cards 16.

[0016]     In a typical Hold 'Em poker game, a button player is first established among the plurality of players. A button marker 18 may be provided on the table to indicate which player is the button player. In the exemplary illustration in FIG. 1, the button player is player (e). When dealing cards, the dealer deals the first card to the

4

1461626

**A018**

player sitting next to the button player in a clockwise direction around the table (player (a)). In Texas Hold 'Em, each player receives a first card beginning with the player sitting in next clockwise sequence of the button player (player (a)), and then each player receives a second card in order. A wagering round is then conducted beginning with the first player sitting next to the button player in the clockwise direction who is still in the game. If the game is being played as a two-blind game, the player sitting in next clockwise sequence of the button player (player (a)) is the small blind and wagers a first amount, and the player in next clockwise sequence of the small blind (player (b)) is the big blind and wagers a second amount, typically twice the first amount. These wagers are considered part of the first wagering round, so the first player to wager after the cards are dealt would be the player in clockwise sequence of the big blind (player (c)).

[0017]     After the first round of wagering is concluded, the dealer deals a first set of three community cards 20, called the "flop." A second round of wagering is conducted typically beginning with the first player in clockwise sequence of the button player who is still in the game and proceeding clockwise around the table. When the second round of wagering is completed, the dealer deals another community card 22, called the "turn." After yet another round of wagering also beginning with the first player sitting next to the button player in the clockwise direction who is still in the game, the dealer deals a fifth community card 24, called the "river." A final wagering round is then conducted again beginning with the first player sitting next to the button player in the clockwise direction who is still in the game.

[0018]     After the wagering rounds are completed, player hands for players still in the game are compared, and the best player hand wins the pot. After the played hand is complete, the button 18 typically passes to the next player at the table in the clockwise direction (player (a) in FIG. 1), and play begins again. See the solid arrow in FIG. 1.

[0019]     With the conventional methodology, the button player or last acting player has a distinct advantage over the other players in that the last acting player has a positional advantage on each betting round throughout the entire hand (provided the button player stays in the game). As such, the button player can better assess each

5

1461626

**A019**

player's actions and mannerisms before deciding whether to wager or fold etc. This advantage is significant during conventional play as the last acting player in the conventional game has the ability to use wager action to influence the game. That is, in each wagering round in the conventional game, the last acting player is afforded the opportunity to see each player's wager action prior to making a wager. The last acting player can thus gain a sense about each player's hand before deciding what action to take (wager, call, raise or fold). Eliminating or reducing this positional advantage by the method of the present invention distributes the advantage during the game, resulting in a game methodology that is more fair than the conventional methodology.

[0020]     In order to reduce the positional advantage, the poker method according to the present invention varies the wagering order or direction. The direction around the table for player wagers may be reversed on a round-by-round basis or for first and last wagering rounds, second and third wagering rounds or any other combination. See the dashed arrow in FIG. 1.

[0021]     In one embodiment, the beginning wagers on each round alternate between the first player still in the game sitting in clockwise sequence of the button player ("the starting player") and either the button player or the first player still in the game sitting in anti-clockwise sequence of the button player if the button player is no longer in the game ("the last acting player"). In these alternating rounds, the wagering direction may follow clockwise, anti-clockwise, clockwise, anti-clockwise or vice versa beginning with anti-clockwise. Alternatively, with a card game including four rounds of wagering, the wagering rounds may be practiced with the initial round of wagering beginning with the starting player with subsequent rounds of wagering beginning with the last acting player in the opposite direction, and with the last subsequent round of wagering beginning with the starting player. In this context, the wagering direction may follow clockwise, anti-clockwise, anti-clockwise, clockwise, or the opposite as anti-clockwise, clockwise, clockwise, anti-clockwise. Still further, the wagering rounds may follow clockwise, clockwise, anti-clockwise, anti-clockwise, or the opposite as anti-clockwise, anti-clockwise, clockwise, clockwise.

6

[0022]    In a two blind game, prior to any cards being dealt, the player sitting next to the button player in clockwise sequence (player (a) in FIG. 1) makes an initial wager for the first round of wagering as the small blind, and the player sitting in clockwise sequence next to the small blind (player (b) in FIG. 1) makes an initial wager as the big blind. After the first cards are dealt to the players, the next wager decision is made (call, raise or fold) by the player sitting next to the big blind in the clockwise direction (player (c) in FIG. 1). In describing this concept, it is assumed that the blinds form part of the first round of wagering. Moreover, when there are two players only, if the first player has the big blind then the button is first to act on the first round only. Of course, there is no clockwise or anti-clockwise wagering with only two players in the game; rather it is a question of who makes the first wager.

[0023]    Other possibilities for games utilizing four wagering rounds include, for example, (1) R1 – clockwise, R2 – clockwise, R3 – anti-clockwise, and R4 – anti-clockwise, (2) R1 – anti-clockwise, R2 – anti-clockwise, R3 – clockwise, and R4 – clockwise; (3) R1 – anti-clockwise, R2 – clockwise, R3 – clockwise, and R4 – anti-clockwise; (4) R1 – anti-clockwise, R2 – clockwise, R3 – anti-clockwise, and R4 – clockwise; (5) R1 – clockwise, R2 – clockwise, R3 – clockwise, and R4 – anti-clockwise; (6) R1 – anti-clockwise, R2 – clockwise, R3 – clockwise, and R4 – clockwise; (7) R1 – anti-clockwise, R2 – anti-clockwise, R3 – anti-clockwise, and R4 – clockwise; and (8) R1 – clockwise, R2 – anti-clockwise, R3 – anti-clockwise, and R4 – anti-clockwise. In these scenarios, it is assumed that a clockwise wagering round begins with the starting player (as defined above - even if the beginning wager for the first round is a blind) and that a anti-clockwise wagering round beings with the last acting player (as defined above).

[0024]    In a game with three rounds of wagering, such as fast action Omaha, wagering order may be practiced as any one of: (1) R1 – clockwise, R2 – anti-clockwise, and R3 – anti-clockwise; (2) R1 – anti-clockwise, R2 – anti-clockwise, and R3 – clockwise; (3) R1 – clockwise, R2 – clockwise, and R3 – anti-clockwise; (4) R1 – anti-clockwise, R2 – clockwise, and R3 – clockwise; (5) R1 – clockwise, R2 – anti-clockwise,

1461626

and R3 – clockwise; and (6) R1 – anti-clockwise, R2 – clockwise, and R3 – anti-clockwise.

**[0025]** To ensure that all players understand the wagering order, the button marker 18 may be marked with the wagering directions as shown in FIG. 2. With the single arrow marker, prior to each wagering round, the dealer can orient the button marker 18 so that the arrow points in the direction of wagering around the table. Alternatively, each button marker may be provided with multiple arrows to indicate wagering directions for each phase of a hand. The markings shown in FIG. 2 are exemplary, and the invention is not meant to be limited to the illustrated examples. The table may alternatively include markings or lights or the like designating the button player and wagering direction.

**[0026]** As would be apparent to those skilled in the relevant art, the embodiments described above can be embodied in a wide variety of forms and media including, but not limited to, single player slot video machines, multi-player slot video machines, electronic games and devices, lottery terminals, scratch-card formats, software as well as in-flight, home and internet entertainment. In addition, the described embodiments can also be readily implemented as a computer program product (e.g., floppy disks, compact disks, etc.) comprising a computer readable medium having control logic recorded therein to implement the features of the invention as described in relation to the other preferred embodiments. The control logic can be loaded into the memory of a computer and executed by a central processing unit (CPU) to perform the operations described herein.

**[0027]** While the invention has been described in connection with what is presently considered to be the most practical and preferred embodiments, it is to be understood that the invention is not to be limited to the disclosed embodiments, but on the contrary, is intended to cover various modifications and equivalent arrangements included within the spirit and scope of the appended claims.

1461626

CLAIMS

1.     A method of playing a player(s) versus player(s) card game comprising:

(a)  using at least one device or using a table, initiating a hand with an even number of rounds of wagering by establishing a button player among a plurality of players, the hand being resolved only after completing the rounds of wagering;

(b)  dealing cards beginning with a starting player positioned relative to the button player, the starting player being a player still in the hand sitting in next clockwise sequence of the button player;

(c)  conducting the even number of rounds of wagering wherein one half of the rounds are conducted in one direction and another half of the rounds are conducted in an opposite direction, the wagering directions for each round being pre-established prior to step (b); and

(d)  completing the hand according to game rules.

2.     A method according to claim 1, wherein the card game is poker and each hand comprises a complete game.

3.     A method according to claim 1, wherein the card game is Texas Hold 'Em.

4.     A method according to claim 1, wherein the card game is Omaha.

5.     A method according to claim 1, comprising four rounds of wagering.

6.     A method according to claim 1, further comprising dealing at least one community card between the rounds of wagering.

7.     A method of playing a player(s) versus player(s) card game with a plurality of players, the method comprising dealing hands of cards to the players one card at a time using at least one device or using a table; conducting multiple rounds of wagering among the players in a first direction; conducting a last round of wagering among the players in a second direction opposite from the first direction; and resolving the card game and wagers only after completing all rounds of wagering, wherein the first direction is pre-established prior to conducting the initial round of wagering.

8.     A method according to claim 7, further comprising dealing at least one community card between the rounds of wagering.

9

1461626

**A023**

9.      A method according to claim 7, wherein the first direction is a clockwise direction.

10.     A method according to claim 9, wherein the second direction is an anti-clockwise direction.

11.     A method according to claim 7, wherein the card game is Texas Hold 'Em.

12.     A method according to claim 7, wherein the card game is Omaha.

13.     A method of playing a player(s) versus player(s) card game comprising:

(a)  using at least one device or using a table, initiating a hand with three or five rounds of wagering by establishing a button player among a plurality of players, the hand being resolved only after completing the rounds of wagering;

(b)  dealing cards beginning with a starting player positioned relative to the button player, the starting player being a player still in the hand sitting in next clockwise sequence of the button player;

(c)  conducting the three or five rounds of wagering respectively in different directions, including clockwise (CW) and anti-clockwise (ACW), wherein the rounds are conducted as one of:

CW-ACW-CW

ACW-CW-ACW

CW-CW-ACW

ACW-ACW-CW

CW-ACW-CW

ACW-CW-CW

CW-ACW-CW-ACW-CW

ACW-CW-ACW-CW-ACW

the wagering directions for each round being pre-established prior to step (b);

(d)  dealing at least one community card between the rounds of wagering; and

(e)  completing the hand according to game rules.

14.     A method of playing a player(s) versus player(s) card game with a plurality of players, the method comprising dealing hands of cards to the players using at

10

least one device or using a table; conducting an initial round of wagering among the players in a first direction; conducting subsequent rounds of wagering among the players, at least a last of the subsequent rounds of wagering among the players being conducted in a second direction opposite from the first direction; and resolving the card game and wagers only after completing all rounds of wagering, wherein the first direction is pre-established prior to conducting the initial round of wagering, and wherein knowledge of the pre-established betting directions has an impact on player decisions.

15.    A method according to claim 14, further comprising dealing at least one community card between the rounds of wagering.

1461626

**A025**



Fig. 1

A027



Fig. 2

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450
Sir:

Atty. Dkt.: AMK-2674-190

Date:  April 24, 2009

Attached for filing is the patent application of:
Inventor:  WEBB
Entitled:    POKER GAMES WITH VARYING POSITION ADVANTAGE
and including attachments as noted below:

☐ Newly executed Declaration, ☒ Copy of Declaration from prior application, ☒ Abstract
☐ Please **delete** the following inventors in the continuation/division/continuation-in-part application:
   **Deleted** persons:
11 pages of specification and claims (including 15 numbered claims), and
2 sheets of accompanying drawing/s for Figures 1 - 2.
☐ Record the attached assignment to          ,          ,          and return to the undersigned.
☒ Attached is a Power of Attorney.
☐ Priority is hereby claimed under 35 U.S.C. § 119 based on the following foreign applications:

| **Application Number** | **Country** | **Day/Month/Year Filed** |
|---|---|---|
| | | |

, respectively, the entire content of which is hereby incorporated by reference in this application.
☐ Certified copy(ies) of foreign application(s) is/are attached.
☐ Certified copy(ies) filed on _____ in prior appln. no. _____ filed _____
☐ This application claims the benefit of Provisional Application No.          , filed          , the entire content of which is hereby incorporated by reference in this application.
☒ This application is a ☒ continuation/☐ division/☐ continuation-in-part of Application No. 11/227,106, filed September 16, 2005, pending, the entire content of which is hereby incorporated by reference in this application.
☐ Petition filed in prior application to extend its life to insure co-pendency.
☒ The prior application is assigned to Prime Table Games LLC,          ,          .
☒ It is hereby requested that the Examiner consider the art cited in the parent application by applicant and/or the Examiner for the reasons stated therein.  A listing of that art is attached.
☐ Applicant claims "small entity" status.  ☐ "Small entity" statement attached.
☐ Please enter the attached preliminary amendment **prior** to calculation of filing fee.
☒ Also attached: ☒ **Information Disclosure Statement and Form PTO/SB/08**; ☒ **Non-Publication Request;** ☐ **Nucleotide and/or Amino Acid Sequence Submission;** ☐ **Statement deleting Inventor(s) named in prior application;** ☐ **Application Data Sheet;** ☐ **Application Title Sheet (1 page);** ☐ **Request to Retrieve Electronic Priority Application(s);** ☐ **Other:**
**FILING FEE IS BASED ON CLAIMS AS FILED LESS ANY HEREWITH CANCELED**

| | | | | |
|---|---|---|---|---|
| Basic Filing Fee | $330.00 (1011)/$165.00 (2011)/$82.00 (4011) | $ | 330.00 |
| Utility Search Fee | $540.00 (1111)/$270.00 (2111) | $ | 540.00 |
| Utility Examination Fee | $220.00 (1311)/$110.00 (2311) | $ | 220.00 |
| Utility Application Size Fee ($270.00) for each **additional** 50 pages that exceeds 100 pages: | | | |
| Total pages: 14-100 = 0 | $0.00 (1081)/    $0.00 (2081) | $ | |
| Total effective claims    15    - 20 (at least 20) =    0    x $  52.00 = $0.00 (1202)/$0.00 (2202) | | $ | |
| Independent claims    4    - 3 (at least 3) =    1    x $  220.00 = $220.00 (1201)/$110.00 (2201) | | $ | 220.00 |
| If any proper multiple dependent claims now added for first time, add $390.00 (1203)/$195.00 (2203) (ignore improper) | | $ | |
| Assignment Recording Fee | $40.00 (8021) | $ | |
| | **TOTAL FEE** | $ | 1,310.00 |

☒ **CREDIT CARD PAYMENT.**

Any future submission requiring an extension of time is hereby stated to include a petition for such time extension.
The Commissioner is hereby authorized to charge any _deficiency_, or credit any overpayment, in the fee(s) filed, or asserted to be filed, or which should have been filed herewith (or with any paper hereafter filed in this application by this firm) to our **Account No. 14-1140.**

Correspondence Address:

# Customer Number:    | 23117 |

Telephone:  (703) 816-4000
Facsimile:  (703) 816-4100
AMK:jls

**NIXON & VANDERHYE P.C.**
By Atty:  Alan M. Kagen, Reg. No. 36,178

Signature: ____/Alan M. Kagen/____

1471019

# A042



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/429,724 | 04/24/2009 | Derek J. Webb | AMK-2674-190 | 1588 |

23117          7590          09/30/2010
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| LAYNO, BENJAMIN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/30/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

**A082**

| | Application No. | Applicant(s) | |
|---|---|---|---|
| **Office Action Summary** | 12/429,724 | WEBB, DEREK J. | |
| | Examiner | Art Unit | |
| | Benjamin H. Layno | 3711 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>27 July 2010</u>.

2a)☒ This action is **FINAL**.     2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-15</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-15</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

## DETAILED ACTION

1.      Applicant's arguments filed 07/27/10 have been fully considered but they are not

persuasive. The rejections follow.

### *Claim Rejections - 35 USC § 101*

1.      35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of
> matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the
> conditions and requirements of this title.

2.      Claims 1-15 are rejected under 35 U.S.C. 101 because the claimed invention is

directed to non-statutory subject matter.

In response to Applicant's argument concerning the US Supreme Court in ***Bilski***

***v. Kappos***, 561 US (2010),  the Applicant argued that the Supreme Court  dismissed

the machine-or-transformation requirement for method claims, the Examiner maintains

that this is not the case.  The Supreme Court did indicate that the machine-or-

transformation test is "not the sole test for patent eligibility", but that it may be a "**useful**

**and important clue or investigative tool**" for deciding whether an invention is a patent

eligible process under 35 USC 101.  In this case, the facts that no particular machine is

required to perform the claimed method steps, nor do the steps result in any

transformation of a particular article, are indicators that Applicant's are **attempting to**

**patent an abstract idea**.  None of the steps are performed by a machine, but rather are

performed by a human being.  Dealing cards from a deck, does not transform the deck

of cards to a different state or thing.   It is the same deck of cards, just arguably a deck

spread out over a greater area.  It is noted here that step (a) of claims 1 includes "using

at least one device or using a table".  Since this device or table does not actually

perform the step of "initiating a hand", "dealing hands of cards", "conducting multiple

rounds", etc., nor is it clear as to how the device or table is being used, this is not

considered the use of a particular machine to perform any step of the claimed method.

The step of using the device or table **does not impose a meaningful limit** on the

claimed invention.

Card games traditionally involve the use of a physical deck of cards dealt to a

player or players, **within a set of predefined rules**.  Wagering may or may not occur in

typical card games.  Those games that do involve wagering follow a clear **set of**

**guidelines or rules** involving the wagering.  Applicant's claimed method, while arguably

reciting a number of physical steps of dealing cards is viewed here as **an attempt to**

**claim a new set of rules for playing a card game.**  In this Examiner's opinion, **a set of**

**rules qualifies as an abstract idea**.  Therefore, the Examiner maintains that

Applicant's claimed method, although couched in terms of a few actual physical steps,

 is a clear **attempt to claim an abstract idea in the form of a new set of rules for**

**playing a card game.**  Since the claimed method requires no machine implementation,

requires no transformation of a particular article and is seen as an **attempt to receive**

**patent protection for an abstract idea in the form of a new set of rules,** the

Examiner maintains that the claimed method is **NOT patent eligible**.

It is noted here that several factors weighing toward and against patent eligibility

have been analyzed by the Examiner, including but not limited to the machine and

transformation factors and the abstract idea or general concept factors discussed

above.  See the Federal Register notice entitled **"Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of Bilski v. Kappos (Fed. Reg. Vol. 75, No. 143/Tuesday, July 27, 2010/Notices)** for a complete list of factors that were considered by the Examiner in the above analysis.  Specifically, the lack of implementation by a particular machine or the transformation of a particular article, the lack of a meaningful limit imposed by the device or table, and the apparent **attempt to claim an abstract idea in the form of a new set of rules** are all factors that **weigh against eligibility**.  The fact the claim may be more than a mere statement of a concept in that an actual method of playing the game is claimed versus just a new set of rules may be a factor weighing towards patent eligibility.  However, in this case that factor weighing towards eligibility is not given much weight since the use of the concept, as expressed in the method, would effectively grant a monopoly over the concept.  It is this Examiner's opinion that the factors in this case weighing against patent eligibility **far outweigh** the factors weighing toward patent eligibility.  The rejection of claims 1-15 under 35 USC 101 as directed to non-statutory subject matter is maintained for the above reasons.

### *Claim Rejections - 35 USC § 103*

3.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4.    Claims 1-3, 5-11 and 13-15 are rejected under 35 U.S.C. 103(a) as being

unpatentable over How To Play Casino Poker – Texas Hold-em in view of Skratulia.

The Applicant is referred to the Office action mailed 04/02/10.

The Applicant has argued that Skratulia does not recite a "wagering direction" or

"wagering sequence" as player merely place wagers in any order to indicate their intent

to participate in the Skratulia's game.  Skratulia discloses various embodiments in which

the dealer acts on player hands in various directions.  Applicant submits that such a

teaching would not have guided one of ordinary skill in the art to modify the

conventional Texas Hold'em poker game to meet the noted features of the claimed

invention.

The Examiner disagrees.  In Skratulia, to determine an action hand 32, three dice

48, 54, 60 are rolled, see steps 42 and 44, Fig. 3.  The roll of the three dice also

determines the direction of sequential play, see Fig. 6  If the total numeric value of the

dice is odd **"Direction of sequential play is clockwise"**, and if the total numeric value

of the dice is even **"Direction of sequential play is counterclockwise"**, see steps 66,

68, 70.  Skratulia recites **"By employing this randomized playing direction

approach, for a full playing table, any positional playing advantage is removed",

col. 4, lines 49-51.**  The Examiner take the position that recitation of "Direction of

sequential" play, Skratulia is referring to the wagering direction or wagering sequence

for each round conducted during play of Skratulia's card game.

Thus, in view of such teaching, it would have been obvious to a person having

ordinary skill in the art to modify the game of Texas Hold-em by alternating the direction

of the rounds (clockwise, counterclockwise) of wagering relative the player having the

player button.  This modification would have mitigated position advantage , see col. 4,

lines 49-51 of Skratulia.

Furthermore, in regard to claim 1, paragraph ( c ), claim 7, claim 13, paragraph (

c ), and claim 14 determining exactly how many rounds of wagering are conducted in

one direction, how many of round of wagering are conducted in an opposite direction,

determining exactly which round is dealt in one direction, and which round is dealt in the

opposite direction would have simply a casino business decision based on the

mitigation of position advantage.  This is always obvious in the art.  Also, determining

how the direction of wagering is established, e.g. by rolling three dice to determine

direction for each round of wagering,  by pre-establishing the direction for each round of

wagering, etc., would also have been a casino business decision based on the

mitigation of position advantage, see Skratulia's teaching above.


5.     Claims 4 and 12 are rejected under 35 U.S.C. 103(a) as being unpatentable over

How To Play Casino Poker – Texas Hold-em in view of Skratulia as applied to claim 1

above, and further in view of Scarne.

The Applicant is referred to the Office action mailed 04/02/10.


6.     **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**Before the Board of Patent Appeals and Interferences**

In re Patent Application of          Atty Dkt.  AMK-2674-190

                                                    C#      M#
                                                Confirmation No. 1588
WEBB                                           TC/A.U.:  3711

Serial No.  12/429,724          Examiner:  B. Layno

Filed:  April 24, 2009                Date:  January 31, 2011

Title:   POKER GAMES WITH VARYING POSITION ADVANTAGE

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

☐ **Correspondence Address Indication Form Attached.**

☒ <u>**NOTICE OF APPEAL**</u>
Applicant hereby **appeals** to the Board of Patent Appeals and Interferences
from the last decision of the Examiner twice/finally rejecting          $540.00 (1401)/$270.00 (2401)   $      540.00
applicant's claim(s).

☐ An appeal **BRIEF** is attached in the pending appeal of the
above-identified application          $540.00 (1402)/$270.00 (2402)   $

☐ Credit for fees paid in prior appeal without decision on merits          -$ (            )

☐ A reply brief is attached.          **(no fee)**

☐ Pre-Appeal Brief Request for Review form attached.

☒ Petition is hereby made to extend the current due date so as to cover the filing date of this
paper and attachment(s)          One Month Extension $130.00 (1251)/$65.00 (2251)
                                           Two Month Extensions $490.00 (1252)/$245.00 (2252)
                                           Three Month Extensions $1110.00 (1253)/$555.00 (2253)
                                           Four Month Extensions $1730.00 (1254)/$865.00 (2254)   $      130.00
   ☐ "Small entity" statement attached.

Less         month extension previously paid on          -$(            )

**TOTAL FEE ENCLOSED**   $     670.00

☒ **CREDIT CARD PAYMENT (FORM ATTACHED IF PAPER FILING).**

Any future submission requiring an extension of time is hereby stated to include a petition for such time extension.
The Commissioner is hereby authorized to charge any <u>deficiency</u>, or credit any overpayment, in the fee(s) filed, or
asserted to be filed, or which should have been filed herewith (or with any paper hereafter filed in this application by this
firm) to our **Account No. 14-1140.**

901 North Glebe Road, 11th Floor          NIXON & VANDERHYE P.C.
Arlington, Virginia 22203-1808          By Atty:  Alan M. Kagen, Reg. No. 36,178
Telephone:  (703) 816-4000
Facsimile:  (703) 816-4100
AMK:jls          Signature:   _____/Alan M. Kagen/_____

1750007

**A093**

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 12429724 |
| **Filing Date:** | 24-Apr-2009 |
| **Title of Invention:** | Poker Games with Varying Position Advantage |
| **First Named Inventor/Applicant Name:** | Derek J. Webb |
| **Filer:** | Alan Mark Kagen/Janet Stoy |
| **Attorney Docket Number:** | AMK-2674-190 |

Filed as Large Entity

### Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Notice of appeal | 1401 | 1 | 540 | 540 |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 1 month with $0 paid | 1251 | 1 | 130 | 130 |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | **670** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 9340637 |
| **Application Number:** | 12429724 |
| **International Application Number:** | |
| **Confirmation Number:** | 1588 |
| **Title of Invention:** | Poker Games with Varying Position Advantage |
| **First Named Inventor/Applicant Name:** | Derek J. Webb |
| **Customer Number:** | 23117 |
| **Filer:** | Alan Mark Kagen/Janet Stoy |
| **Filer Authorized By:** | Alan Mark Kagen |
| **Attorney Docket Number:** | AMK-2674-190 |
| **Receipt Date:** | 31-JAN-2011 |
| **Filing Date:** | 24-APR-2009 |
| **Time Stamp:** | 13:42:34 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $670 |
| RAM confirmation Number | 11582 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

**A096**

| 1 | Notice of Appeal Filed | 2674-190_cvr_not_of_appeal.pdf | 57740 abee1ae1e08a7186bc9c57903e7c673e44a4e622 | no | 1 |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 32112 22fc6d62da0664d71f44c278791e664d4c8b2957 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 89852 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/429,724 | 04/24/2009 | Derek J. Webb | AMK-2674-190 | 1588 |

23117        7590        07/21/2011
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| LAYNO, BENJAMIN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/21/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

**A136**

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

## BEFORE THE BOARD OF PATENT APPEALS
## AND INTERFERENCES

Application Number:  12/429,724
Filing Date: April 24, 2009
Appellant(s): WEBB, DEREK  J.

_____

Alan Kagan
<u>For Appellant</u>

## EXAMINER'S ANSWER

This is in response to the appeal brief filed 04/25/11 appealing from the Office action

mailed 09/30/10.

Application/Control Number: 12/429,724                                    Page 3
Art Unit: 3711

### (1) Real Party in Interest

The examiner has no comment on the statement, or lack of statement, identifying by name the real party in interest in the brief.

### (2) Related Appeals and Interferences

The examiner is not aware of any related appeals, interferences, or judicial proceedings which will directly affect or be directly affected by or have a bearing on the Board's decision in the pending appeal.

### (3) Status of Claims

The following is a list of claims that are rejected and pending in the application: Claims 1-15.

### (4) Status of Amendments After Final

The examiner has no comment on the appellant's statement of the status of amendments after final rejection contained in the brief.

### (5) Summary of Claimed Subject Matter

The examiner has no comment on the summary of claimed subject matter contained in the brief.

Application/Control Number: 12/429,724                                    Page 4
Art Unit: 3711

**(6) Grounds of Rejection to be Reviewed on Appeal**

The examiner has no comment on the appellant's statement of the grounds of

rejection to be reviewed on appeal.  Every ground of rejection set forth in the Office

action from which the appeal is taken (as modified by any advisory actions) is being

maintained by the examiner except for the grounds of rejection (if any) listed under the

subheading "WITHDRAWN REJECTIONS."  New grounds of rejection (if any) are

provided under the subheading "NEW GROUNDS OF REJECTION."

**(7) Claims Appendix**

The examiner has no comment on the copy of the appealed claims contained in

the Appendix to the appellant's brief.

**(8) Evidence Relied Upon**

Royer, Victor H., "How To Play Casino Poker - Texas Hold - Em",

http://www.vegas.com/vegascom/betbac/holdem.html, (July 11, 1996).

Scarne, John, "Omaha", Scarne's Encyclopedia of Card Games, Harper and

Row,  pp. 14 and 26,  1973.

5,607,161                        SKRATULIA                    3-1997

**(9) Grounds of Rejection**

The following ground(s) of rejection are applicable to the appealed claims:

### *Claim Rejections - 35 USC § 101*

35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Claims 1-15 are rejected under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter.

### *Machine-or-Transformation Test*

For **a process (method) claim** to be statutory subject matter, the process must:

(1) be tied to another statutory class (such as a particular **machine or apparatus**), or

(2) provide **transformation** of the underlying subject matter (such as an article or materials) to a different state or thing.

Process claims tied to a **machine or apparatus** must positively recite the other statutory class (the **machine or apparatus**) to which it is tied, for example by identifying the machine that accomplishes the method steps.

Process claims providing **transformation** must positively recite the subject matter that is being transformed, for example by identifying the material that is being changed to a different state.

If the claimed method is determined to be a statutory subject matter eligible process, then it must be determined whether the claimed invention falls within a judicial exception (law of nature, natural phenomena or abstract idea).  If the claimed judicial exception is practically applied, then the claimed invention is statutory.  Practical application can be realized in one of two ways:

(1)  Does the use of the particular **machine or apparatus** impose a meaningful limit on the claim's scope? Does use of the **machine or apparatus** involve more than insignificant extra-solution activity?

(2) Does the **transformation** impose a meaningful limit on the claim's scope? Does the **transformation** involve more than insignificant extra-solution activity?

See *In re Bilski*, 545 F.3d 943, 88 USPQd 1385 (Fed. Cir. 2008), and see MPEP 2106, subsections IV.C.2.


The method claims 1-15 of the present invention merely set forth steps in playing a player(s) versus player(s) card game.

**The claimed invention does not recite a sufficient tie to a machine or apparatus.**  The machine or apparatus should implement the process (method steps), and not merely be an object upon which the process operates.  The claims should be clear as to how the machine or apparatus implements the process, rather than simply stating "a machine implemented process". The claimed apparatus of a  "table" and "cards" per se **are merely objects upon which the process (method steps) operates, and do not by itself implement the process (method steps).**  The claimed

Application/Control Number: 12/429,724                                      Page 7
Art Unit: 3711

a "table" and "cards" **do not inherently require the use of a specific machine to**

**perform the steps.** The machine or apparatus limitations should make clear that the

use of a machine or apparatus in the claimed process **imposes a meaningful limit** on

the claim's scope, and does use a machine involving **more than insignificant extra-**

**solution activity.**

      Also, **there is no transformation in these method claims**. The dealing of cards

onto a table does not transform the cards or the table into a different state or thing.  The

dealing of cards onto a table only moves the cards from one place to another, the cards

and the table remains the same and do not transform into a different deck of cards or

into a different table.


### *Abstract Idea*

      In view of the US Supreme Court decision in ***Bilski v. Kappos***, 130 S. Ct. US

3218 (2010),  the Supreme Court indicated that the machine-or-transformation test is

"not the sole test for patent eligibility", but that it may be a "**useful and important clue**

**or investigative tool**" for deciding whether an invention is a patent eligible process

under 35 USC 101.  In this case, the facts that no particular machine is required to

perform the claimed method steps, nor do the steps result in any transformation of a

particular article, are indicators that Applicant's are **attempting to patent an abstract**

**idea**.  None of the steps are performed by a machine, but rather are performed by a

human being.  Dealing cards from a deck, does not transform the deck of cards to a

different state or thing.   It is the same deck of cards, just arguably a deck spread out

over a greater area.  It is noted here that step (a) of claims 1 includes "using at least

one device or using a table".  Since this device or table does not actually perform the

step of "initiating a hand", "dealing hands of cards", "conducting multiple rounds", etc.,

nor is it clear as to how the device or table is being used, this is not considered the use

of a particular machine to perform any step of the claimed method.  The step of using

the device or table **does not impose a meaningful limit** on the claimed invention.

Card games traditionally involve the use of a physical deck of cards dealt to a

player or players, **within a set of predefined rules**.  Wagering may or may not occur in

typical card games.  Those games that do involve wagering follow a clear **set of**

**guidelines or rules** involving the wagering.  Applicant's claimed method, while arguably

reciting a number of physical steps of dealing cards is viewed here as **an attempt to**

**claim a new set of rules for playing a card game.**  In this Examiner's opinion, **a set of**

**rules qualifies as an abstract idea**.  Therefore, the Examiner maintains that

Applicant's claimed method, although couched in terms of a few actual physical steps,

 is a clear **attempt to claim an abstract idea in the form of a new set of rules for**

**playing a card game.**  Since the claimed method requires no machine implementation,

requires no transformation of a particular article and is seen as an **attempt to receive**

**patent protection for an abstract idea in the form of a new set of rules,** the

Examiner maintains that the claimed method is **NOT patent eligible**.

It is noted here that several factors weighing toward and against patent eligibility

have been analyzed by the Examiner, including but not limited to the machine and

transformation factors and the abstract idea or general concept factors discussed

Application/Control Number: 12/429,724                                    Page 9
Art Unit: 3711

above.  See the Federal Register notice entitled **"Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of Bilski v. Kappos (Fed. Reg. Vol. 75, No. 143/Tuesday, July 27, 2010/Notices)** for a complete list of factors that were considered by the Examiner in the above analysis.  Specifically, the lack of implementation by a particular machine or the transformation of a particular article, the lack of a meaningful limit imposed by the device or table, and the apparent **attempt to claim an abstract idea in the form of a new set of rules** are all factors that **weigh against eligibility**.  The fact the claim may be more than a mere statement of a concept in that an actual method of playing the game is claimed versus just a new set of rules may be a factor weighing towards patent eligibility.  However, in this case that factor weighing towards eligibility is not given much weight since the use of the concept, as expressed in the method, would effectively grant a monopoly over the concept.  It is this Examiner's opinion that the factors in this case weighing against patent eligibility **far outweigh** the factors weighing toward patent eligibility.  The rejection of claims 1-15 under 35 USC 101 as directed to non-statutory subject matter is maintained for the above reasons.

### *Claim Rejections - 35 USC § 103*

1.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Application/Control Number: 12/429,724                                        Page 10
Art Unit: 3711

2.      Claims 1-3 5-11 and 13-15 are rejected under 35 U.S.C. 103(a) as being

unpatentable over How To Play Casino Poker – Texas Hold-em in view of Skratulia.

        The article How To Play Casino Poker – Texas Hold-em discloses a player(s)

versus player(s) poker game.  The game is played on a table, and uses a deck of

playing cards.  There are an even number of wagering rounds (four betting rounds), a

first round of wagering occurring after each player is dealt two cards, a second round of

wagering occurring after three common cards are dealt (flop), a third round of wagering

occurring after a fourth common card is dealt, and a third round of wagering occurring

after a fifth common card is dealt.  Cards are dealt beginning with a starting player

positioned relative to a button player (dealer's puck).  The multiple rounds of wagering

each start with the player to the left of the button player.  Players take turns wagering in

a clockwise direction.

        The patent to Skratulia discloses a method of playing a poker game.  Skratulia

teaches that it is known in the poker game art to reverse the wagering direction

(clockwise or counter-clockwise) after each wagering sequence in poker, col. 4, lines

20-53.  Skratulia also teaches that it is known in the poker game art that the button

player can be either the of the last acting player of the starting player and can also

alternate between the two positions after each sequence of wagering, col. 4, lines 20-

53.  Thus, in view of such teaching, it would have been obvious to a person having

ordinary skill in the art to modify the game of Texas Hold-em by alternating the direction

of the rounds of wagering relative the player having the player button.  This modification

would have mitigated position advantage , see col. 4, lines 49-51 of Skratulia.

**A145**

Furthermore, in regard to claim 1, paragraph ( c ), claim 7, and claim 13, paragraph ( c ), determining exactly how many rounds of wagering are conducted in one direction, how many of round of wagering are conducted in an opposite direction, determining exactly which round is dealt in one direction, and which round is dealt in the opposite direction  would have simply a casino business decision based on the mitigation of position advantage.  This is always obvious in the art.

3.      Claims 4 and 12 are rejected under 35 U.S.C. 103(a) as being unpatentable over How To Play Casino Poker – Texas Hold-em in view of Skratulia as applied to claim 1 above, and further in view of Omaha, Scarne's Encyclopedia of Games.

The publication Scarne's Encyclopedia of Games discloses the poker game of Omaha.  One of ordinary skill in the art would have found it obvious to implement the wagering technique taught by Skratulia to the Omaha poker game in order to mitigate positional advantage during each hand, col. 4, lines 49-51.

**(10) Response to Argument**

The Applicant has argued that "machine as used in M-or-T test, actually means, "machine or apparatus", and the playing cards specifically called for by all of the claims at issue are very specifically identified apparatus are the only apparatus with which the claimed game can be played.  The claimed invention cannot be played with dice, checkers, chess pieces, Pai Gow tiles, ping-pong balls, or toy soldiers.  The Applicant concludes "This specifically claimed apparatus limitation not only satisfies the M-or-T

Application/Control Number: 12/429,724                                    Page 12
Art Unit: 3711

test; it also removes the invention from the realm of an 'abstract idea', which is the

actual key to the patentability of method or process claims under the Supreme Court's

holding of *Bilski,* 130 S. Ct. at 3230.

 The Examiner takes the position the Courts stated that the machine is to be "tied"

to or <u>required</u> by the steps of the method.  Here, the "cards" are not considered to be

"required" by any of the steps since the claimed "cards" do not actually perform any of

the steps of the claimed method.  In concluding that the claimed "cards" are not

required, it was determined that the steps of the method can most broadly be

performed with or without the "cards" recited.  For for example, a player can mentally

determining a playing card value rather than use actual playing cards.  Here, while

using actual playing cards amounts to a convenient way for players to generate a

playing card value, such is clearly not required to perform the rules of the game being

recited in the steps.   As such, the step of using  playing cards is not considered to

impose a meaningful limit on the abstract idea attempting to be claimed.

 The Applicant has also argued that "With regard to 'abstract ideas', Appellant

submits that steps including, for example, dealing cards and conducting rounds of

wagering are physical steps and are thus clearly distinguishable from mere abstract

ideas as contemplated by the Supreme Court's precedents".  The Applicant continues to

argue "That there is nothing 'abstract' in the subject matter of the present invention.  As

noted, the claimed method can only be accomplished with specific playing cards.  The

method is also defined around a very specific set of 'physical steps' of dealing cards and

conducting wagering rounds in specified directions.  These physical steps are entirely

inconsistent with ordinary, contemporary, common means of 'abstract' ideas".

The Examiner maintains his position that the claimed physical steps are

viewed as an attempt to claim a new set of rules for playing a card game.  A set of rules

qualifies as an abstract idea.  Therefore, the Applicant's claimed method, although

couched in terms of a few actual physical steps, is a clear attempt to claim an abstract

idea in the form of a new set of rules for playing a card game.  Since the claimed

method requires no machine implementation, requires no transformation of a particular

article and is seen as an attempt to receive patent protection for an abstract idea in the

form of a new set of rules**,** the claimed method is **NOT patent eligible**.


In regard to the 103 rejection, the Applicant has argued that Skratulia does not

recite a "wagering direction" or "wagering sequence" as players merely place wagers in

any order to indicate their intent to participate in the Skratulia's game.  Skratulia

discloses various embodiments in which the dealer acts on player hands in various

directions.  Applicant submits that such a teaching would not have guided one of

ordinary skill in the art to modify the conventional Texas Hold'em poker game to meet

the noted features of the claimed invention.

The Examiner disagrees.  In Skratulia, to determine an action hand 32, three dice

48, 54, 60 are rolled, see steps 42 and 44, Fig. 3.  The roll of the three dice also

determines the direction of sequential play, see Fig. 6  If the total numeric value of the

dice is odd "**Direction of sequential play is clockwise**", and if the total numeric value

Application/Control Number: 12/429,724                                        Page 14
Art Unit: 3711

of the dice is even "**Direction of sequential play is counterclockwise**", see steps 66,

68, 70.  Skratulia recites **"By employing this randomized playing direction**

**approach, for a full playing table, any positional playing advantage is removed",**

**col. 4, lines 49-51.**  The Examiner take the position that recitation of "Direction of

sequential" play, Skratulia is referring to the wagering direction or wagering sequence

for each round conducted during play of Skratulia's card game.

Thus, in view of such teaching, it would have been obvious to a person having

ordinary skill in the art to modify the game of Texas Hold-em by alternating the direction

of the rounds (clockwise, counterclockwise) of wagering relative the player having the

player button.  This modification would have mitigated position advantage , see col. 4,

lines 49-51 of Skratulia.

### (11) Related Proceeding(s) Appendix

No decision rendered by a court or the Board is identified by the examiner in the

Related Appeals and Interferences section of this examiner's answer.

Application/Control Number: 12/429,724                                    Page 15
Art Unit: 3711

For the above reasons, it is believed that the rejections should be sustained.

Respectfully submitted,

/Benjamin H. Layno/

Primary Examiner, Art Unit 3711

Conferees:

/Gene  Kim/

Supervisory Patent Examiner, Art Unit 3711

/XUAN M. THAI/

Supervisory Patent Examiner, Art Unit 3715

**A150**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Patent Application of | PTAB Appeal 2012-001567 |
| WEBB | Atty. Ref.: AMK-2674-190; Confirmation No. 1588 |
| Appl. No. 12/429,724 | Art Unit: 3711 |
| Filed: April 24, 2009 | Examiner: B. Layno |

For:   POKER GAMES WITH VARYING POSITION ADVANTAGE

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

May 29, 2014

Mail Stop 8
Director of the U.S. Patent and Trademark Office
Office of the Solicitor
P.O. Box 1450
Alexandria, VA  22313-1450

### NOTICE OF APPEAL TO THE U.S. COURT OF APPEALS
### FOR THE FEDERAL CIRCUIT

Dear Director:

The inventor, Derek J. Webb, and patent owner, Prime Table Games LLC, appeal the
Decision On Appeal ("Decision") mailed April 1, 2014, by the Patent Trial and Appeal Board
("PTAB") for the above-identified application in Appeal 2012-001567.

The Notice of Appeal is being filed within the time limit set forth in 37 C.F.R. 90.3(a)(1).
A copy of the Decision is attached.

The requisite number of copies of the Notice of Appeal and a $500.00 fee are being sent
today to the U.S. Court of Appeals for the Federal Circuit, pursuant to 28 U.S.C. §1913 and
Federal Circuit Rule 52(a)(3)(A).

2352334

**A190**

WEBB
Appl. No. 12/429,724
May 29, 2014

The Director is hereby authorized to charge any <u>deficiency</u>, or credit any overpayment, in the fee(s) filed, or asserted to be filed, or which should have been filed herewith to Deposit Account No. 14-1140.

Respectfully submitted,

**NIXON & VANDERHYE P.C.**

By: _____
Alan M. Kagen
Reg. No. 36,178

AMK:jls
901 North Glebe Road, 11th Floor
Arlington, VA 22203-1808
Telephone: (703) 816-4000
Facsimile: (703) 816-4100

- 2 -

2352334

**A191**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of                     PTAB Appeal 2012-001567

WEBB                                            Atty. Ref.: AMK-2674-190; Confirmation No. 1588

Appl. No. 12/429,724                            Art Unit: 3711

Filed: April 24, 2009                           Examiner: B. Layno

For:    POKER GAMES WITH VARYING POSITION ADVANTAGE

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

                                                        May 29, 2014

Mail Stop 8
Director of the U.S. Patent and Trademark Office
Office of the Solicitor
P.O. Box 1450
Alexandria, VA  22313-1450

### EXPRESS MAILING CERTIFICATE

I certify that the following correspondence:

1.      Notice of Appeal to the U.S. Court Of Appeals For The Federal Circuit for this
        application

2.      copy of the Decision on Appeal in Appeal 2012-001567, and

3.      self-addressed stamped postcard, return of which is requested to acknowledge
        receipt of the enclosed correspondence

are being deposited on May 29, 2014, with the U.S. Postal Service "Express Mail Post Office to
Addressee" for service under 37 C.F.R. 12.10 in an envelope addressed to: Mail Stop 8, Office of
the Solicitor, Director of the U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA
22313-1450.  The Express Mail Label Number is ED 861431893 US.

                        NIXON & VANDERHYE P.C.

                By:     _____
                                Alan M. Kagen
                                Reg. No. 36,178

AMK:jls
901 North Glebe Road, 11th Floor
Arlington, VA 22203-1808
Telephone: (703) 816-4000
Facsimile:  (703) 816-4100

                                                                2352334

# A192



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**MEMORANDUM**

**DATE:**      June 25, 2014

**TO:**        Patent Examining Corps

**FROM:**      Andrew H. Hirshfeld
              Deputy Commissioner
              For Patent Examination Policy

**SUBJECT:**   **Preliminary Examination Instructions in view of the Supreme Court Decision in *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.***

Last week, in a unanimous decision, the Supreme Court held that the patent claims in *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.* ("*Alice Corp.*") are not patent-eligible under 35 U.S.C. § 101. The patents at issue disclose a scheme for mitigating "settlement risk," *i.e.*, the risk that only one party to an agreed-upon financial exchange will satisfy its obligation, in which a computer system is used as a third-party intermediary between the parties to the exchange. The patent claims are styled as a method for exchanging financial obligations, a computer system configured to carry out the method, and a computer-readable storage medium containing program code for causing a computer to perform the method.

The Court determined that Alice Corp.'s claims to methods were ineligible because "the claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer." Alice Corp.'s claims to computer systems and computer-readable storage media were held ineligible for substantially the same reasons, *e.g.*, that the generically-recited computers in the claims add nothing of substance to the underlying abstract idea. Notably, *Alice Corp.* neither creates a *per se* excluded category of subject matter, such as software or business methods, nor imposes any special requirements for eligibility of software or business methods.

The purpose of this memorandum is to provide preliminary instructions effective today to the Patent Examining Corps relating to subject matter eligibility of claims involving abstract ideas, particularly computer-implemented abstract ideas, under 35 U.S.C. § 101. The USPTO is continuing to study *Alice Corp.* in the context of existing precedent and will seek public feedback on the instructions. Further guidance will be issued after additional consideration of the decision and public feedback in the context of the existing law under 35 U.S.C. § 101.

<u>Preliminary Instructions for Analyzing Claims with Abstract Ideas</u>

The Supreme Court made clear in *Alice Corp.* that it applies the framework set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. __ (2012) (*Mayo*), to analyze all claims directed to laws of nature, natural phenomena, and abstract ideas for subject matter eligibility under 35 U.S.C. § 101. This framework is currently being used by the

**A193**

USPTO to examine claims involving laws of nature, but had not been used for claims involving abstract ideas. Therefore, the following instructions differ from prior USPTO guidance in two ways:

1) *Alice Corp.* establishes that the same analysis should be used for all types of judicial exceptions, whereas prior USPTO guidance applied a different analysis to claims with abstract ideas (*Bilski* guidance in MPEP 2106(II)(B)) than to claims with laws of nature (*Mayo* guidance in MPEP 2106.01).

2) *Alice Corp.* also establishes that the same analysis should be used for all categories of claims (*e.g.*, product and process claims), whereas prior guidance applied a different analysis to product claims involving abstract ideas (relying on tangibility in MPEP 2106(II)(A)) than to process claims (*Bilski* guidance).

Despite these changes, the basic inquiries to determine subject matter eligibility remain the same as explained in MPEP 2106(I).  First determine whether the claim is directed to one of the four statutory categories of invention, *i.e.*, process, machine, manufacture, or composition of matter. If the claim does not fall within one of the categories, reject the claim as being directed to non-statutory subject matter. Next, if the claim does fall within one of the statutory categories, determine whether the claim is directed to a judicial exception (*i.e.*, law of nature, natural phenomenon, and abstract idea) using Part 1 of the two-part analysis detailed below, and, if so, determine whether the claim is a patent-eligible application of an exception using Part 2. This two-part analysis supersedes MPEP 2106(II)(A) and 2106(II)(B).

For purposes of this preliminary instruction memo, only claims that involve abstract ideas are addressed, since the USPTO's current guidance for claims that involve laws of nature/natural phenomena already uses the *Mayo* framework. *See Guidance For Determining Subject Matter Eligibility Of Claims Reciting Or Involving Laws of Nature, Natural Phenomena, & Natural Products* (March 4, 2014).

**Two-part Analysis for Abstract Ideas**

Following *Alice Corp.*, now analyze all claims (product and process) having an abstract idea using the following two-part analysis set forth in *Mayo*:

**Part 1**:  Determine whether the claim is directed to an abstract idea.

As emphasized in *Alice Corp.*, abstract ideas are excluded from eligibility based on a concern that monopolization of the basic tools of scientific and technological work might impede innovation more than it would promote it. At the same time, the courts have tread carefully in construing this exclusion because, at some level, all inventions embody, use, reflect, rest upon or apply abstract ideas and the other exceptions. Thus, an invention is not rendered ineligible simply because it involves an abstract concept. In fact, inventions that integrate the building blocks of human ingenuity into something more by applying the abstract idea in a meaningful way are eligible.

Examples of abstract ideas referenced in *Alice Corp.* include:

- Fundamental economic practices[1];
- Certain methods of organizing human activities[2];

- "[A]n idea of itself"[3]; and,
- Mathematical relationships/formulas[4].

**Claims that include abstract ideas like these should be examined under Part 2 below to determine whether the abstract idea has been applied in an eligible manner.**

If an abstract idea is present in the claim, proceed to <u>Part 2</u> below. If not, proceed with examination of the claim for compliance with the other statutory requirements for patentability.

<u>Part 2</u>: If an abstract idea is present in the claim, determine whether any element, or combination of elements, in the claim is sufficient to ensure that the claim amounts to **significantly more** than the abstract idea itself. In other words, are there other limitations in the claim that show a patent-eligible application of the abstract idea, e.g., more than a mere instruction to apply the abstract idea? Consider the claim as a whole by considering all claim elements, both individually and in combination.

Limitations referenced in *Alice Corp.* that may be enough to qualify as "significantly more" **when recited in a claim with an abstract idea** include, as non-limiting or non-exclusive examples:

- Improvements to another technology or technical field[5];
- Improvements to the functioning of the computer itself[6];
- Meaningful limitations beyond generally linking the use of an abstract idea to a particular technological environment[7].

Limitations referenced in *Alice Corp.* that are <u>not</u> enough to qualify as "significantly more" **when recited in a claim with an abstract idea** include, as non-limiting or non-exclusive examples:

- Adding the words "apply it" (or an equivalent) with an abstract idea, or mere instructions to implement an abstract idea on a computer[8];
- Requiring no more than a generic computer to perform generic computer functions that are well-understood, routine and conventional activities previously known to the industry[9].

If there are no meaningful limitations in the claim that transform the exception into a patent eligible application such that the claim amounts to significantly more than the exception itself, the claim should be rejected under 35 U.S.C. § 101 as being directed to non-statutory subject matter (use Form ¶ 7.05.01).

After conducting the two-part analysis, proceed with examination of the claim, regardless of whether a rejection under § 101 has been made, to determine patentability in accordance with the other requirements of 35 U.S.C. § 101 (utility and double patenting), non-statutory double patenting, and §§ 112, 102, and 103.

---

[1] *Alice Corp.*, slip op. at 7-9: *e.g.*, intermediated settlement, *i.e.*, the use of a third party intermediary to mitigate settlement risk.

3

**A195**

[2] *Id.*, slip op. at 10: *e.g.*, a series of steps instructing how to hedge risk (citing *Bilski v. Kappos*, 561 U.S. 593, 599 (2010)).

[3] *Id.*, slip op. at 7-8: *e.g.*, a principle, an original cause, a motive (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) and *LeRoy v. Tatham*, 14 How. 156, 175 (1853)).

[4] *Id.*, slip op. at 8: *e.g.*, a mathematical formula for computing alarm limits in a catalytic conversion process (*Parker v. Flook*, 437 U.S. 584, 594-595 (1978)), or a formula for converting binary-coded decimal numerals into pure binary form (*Benson*, 409 U.S. at 71-72).

[5] *Id.*, slip op. at 15: *e.g.*, a mathematical formula applied in a specific rubber molding process (citing *Diamond v. Diehr*, 450 U.S. 175, 177-178 (1981)).

[6] *Id.*, slip op. at 15.

[7] *Id.*, slip op. at 16: noting that none of the hardware recited "offers a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment,' that is, implementation via computers" (citing *Bilski*, 561 U.S. at 610, 611).

[8] *Id.*, slip op. at 12, 13: *e.g.*, simply implementing a mathematical principle on a physical machine, namely a computer (citing *Mayo*, slip op., at 16).

[9] *Id.*, slip op. at 15: *e.g.*, using a computer to obtain data, adjust account balances, and issue automated instructions.

# Certificate of service

I, Michael E. Crawford, being duly sworn according to law and over the age of 18, upon my oath depose and state that:

1.    I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel for Appellee registered as CM/ECF users:

> Nathan K. Kelley – Solicitor
> nathan.kelley@uspto.gov
> Scott C. Weidenfeller
> scott.weidenfeller@uspto.gov
> Molly R. Silfen
> molly.silfen@uspto.gov
> UNITED STATES PATENT AND TRADEMARK OFFICE
> Office of the Solicitor
> Mail Stop 8, P.O. Box 1450
> Alexandria, Virginia 22313-1450

> *Counsel for Appellee*

2.    Upon acceptance by the Court of the above e-filed document, six paper copies will be filed with the Court, via FEDERAL EXPRESS and within the time provided in the Court's rules, by BYRON S. ADAMS who has been retained to print this document.


December 2, 2014                    */s/ Michael E. Crawford*
                                   Michael E. Crawford
                                   mec@nixonvan.com
                                   NIXON & VANDERHYE P.C.